PACIFIC EXPRESS COMPANY V. JOHN F. CORNELL ET AL.

FILED DECEMBER 19, 1899. No. 10,416.

1. **Injunction Against Officers: VOID STATUTES.** Where it is alleged that a public body is proceeding to interfere with the rights of a person or corporation in a manner which will cause damage, for which there is no adequate remedy at law, or which may cause a multiplicity of suits, and it is further alleged that the law under which the proceedings are in progress is unconstitutional, the petition presents cause for equitable relief by injunction to prevent further action.

2. **Executive Officers: DUTIES: CONSTITUTIONAL LAW.** Under the provisions of the present constitution, the state officers of the executive department, as named therein, are charged with the performance of all duties executive in their nature, which are by law required of them. NORVAL, J., dissenting.

3. **State Board of Transportation: STATE OFFICERS: DUTIES.** The law creating the board of transportation, by which certain designated state officers of the executive department are charged with prescribed duties in regard to railroads, does not cast such duties upon the individuals, as distinguished from the offices or officers, but it is the latter upon whom is put the burden of further acts executive in their nature.

4. **Executive Officers: DUTIES: BOARDS: CONSTITUTIONAL LAW.** There is nothing in the constitution which prohibits the requirement of the performance by any, either or all the executive officers of the state, of additional duties executive in their nature, nor to inhibit action by two or three in the doing thereof by conclusions announced by them collectively or as a board. NORVAL, J., dissenting.

5. ———: **SECRETARIES OF BOARD OF TRANSPORTATION.** The secretaries, whose appointment is provided for by the law, are not executive state officers. They are, in the nature of mere deputies, to act for their principals in matters which precede and lead to a final order or decision, which must be by the principals.

6. **Board of Transportation: STATUTES: AMENDMENTS.** The act of 1897 (Session Laws, p. 303, ch. 56) placed certain companies or persons, owners or in control of telegraph, telephone or express line or lines, under the control of the board of transportation, and for the jurisdiction and powers of the board adopted such as were conferred by a prior act. It was not amendatory of the act of 1887, by which there was created the board of transportation.

7. **Carriers: VOID MAXIMUM RATE LAW: ENFORCEMENT OF STATUTE CREATING BOARD OF TRANSPORTATION.** The law of 1893, known as the maximum rate law, or the portion thereof which contained the schedule of rates, was declared unconstitutional, under the then existent conditions, by the supreme court of the United States. This carried with it section 6 of the act, which could have no operation except in connection with the rates as fixed in the schedule. Such law is now as if non-existent, and does not interfere with the enforcement of the law of 1887, to which we have referred, by the board and in the method provided in the law of 1887, to which we have hereinbefore alluded.

APPEAL from the district court of Lancaster county. Heard below before CORNISH, J.  *Affirmed.*

The opinion contains a statement of the case.

*W. W. Morsman* and *A. R. Talbot,* for appellant:

The act of 1887 (Session Laws, ch. 60), creating the board of transportation and defining its powers, is in conflict with section 26 of article 5 of the constitution, prohibiting the legislature from creating any other executive state office than those defined in the constitution, and is in conflict with section 2 of article 5, which provides that none of the officers of the executive department shall be eligible to any other state office. See *State v. Liedtke,* 9 Nebr., 464; *State v. Fremont, E. & M. V. R. Co.,* 22 Nebr., 313; *Nebraska Telephone Co. v. State,* 55 Nebr., 627.

At the time of the passage of the act of 1897 (Session Laws, ch. 56), whatever power the board of transportation previously had, under the act of 1887, to regulate rates, had been repealed by the act of 1893, known as

the Maximum Rate Law, and, therefore, chapter 56 of the Laws of 1897 was ineffectual to confer upon the board the power to regulate the rates to be charged by appellant. See *State v. Fremont, E. & M. V. R. Co.*, 22 Nebr., 313.

The act of 1897 (Session Laws, ch. 56) is an amendatory act, and does not "contain" the section or sections so amended, nor does it "repeal" such section or sections, and is, therefore, unconstitutional and void. See *People v. McCallum*, 1 Nebr., 182; *Smails v. White*, 4 Nebr., 353; *Sovereign v. State*, 7 Nebr., 409; *State v. Corner*, 22 Nebr., 265; *In re House Roll 284*, 31 Nebr., 505; *Stricklett v. State*, 31 Nebr., 674; *Trumble v. Trumble*, 37 Nebr., 340; *State v. County Commissioners*, 47 Nebr., 428; *Morgan v. State*, 48 Nebr., 798; *State v. Moore*, 48 Nebr., 872; *Sheasley v. Keens*, 48 Nebr., 57; *Lancaster County v. Hoagland*, 8 Nebr., 37; *City of South Omaha v. Taxpayers' League*, 42 Nebr., 678; *German-American Fire Ins. Co. v. City of Minden*, 51 Nebr., 870; *Board of Education v. Moses*, 51 Nebr., 288; *State v. Tibbets*, 52 Nebr., 228.

References as to inadequacy of a remedy at law: *Boyce v. Grundy*, 3 Pet. [U. S.], 210; *Sullivan v. Portland & K. R. Co.*, 94 U. S., 806; *Wylie v. Coxe*, 15 How. [U. S.], 415; *Tyler v. Savage*, 143 U. S., 79; *Richardson Drug Co. v. Meyer*, 54 Nebr., 319; *Miller v. Drane*, 75 N. W. Rep. [Wis.], 413; *Kilbourn v. Sunderland*, 130 U. S., 505; *Board of Liquidation v. McComb*, 92 U. S., 531; *Davis v. Grey*, 16 Wall. [U. S.], 203; *Osborn v. United States Bank*, 9 Wheat. [U. S.], 738; *Pennoyer v. McConnaughy*, 140 U. S., 1; *Morris v. Merrill*, 44 Nebr., 428; *City of Omaha v. Megcath*, 46 Nebr., 511.

*C. J. Smyth, Attorney General, contra:*

That part of section 26 of article 5 of the constitution which provides that "no other executive state office shall be continued or created" does not prohibit the legislature from creating a board of transportation and authorizing

the governor to appoint the members thereof from electors outside of the executive state officers named in section 1 of the same article. See *In re Railroad Commissioners*, 15 Nebr., 679; *State v. Weston*, 4 Nebr., 234; *State v. Smith*, 35 Nebr., 25.

The creation of a board of transportation out of state officers is not the creation of an office distinct from the several offices of the officers composing the board. See *State v. Judges*, 21 O. St., 1.

The law providing for secretaries of the board of transportation is not unconstitutional. See *State v. Fremont, E. & M. V. R. Co.*, 22 Nebr., 313, 23 Nebr., 117; *State v. Missouri P. R. Co.*, 29 Nebr., 550.

The act of 1897 (Session Laws, ch. 56), by its express terms, does not limit the power to regulate charges of telephone companies for messages sent.

The act of 1897 is not an amendatory act; and hence the argument by counsel, that the act is, for that reason, unconstitutional, must fail. See *Campbell v. Board of Pharmacy*, 45 N. J. Law, 245; *State v. Hibernia R. Co.*, 47 N. J. Law, 43; *People v. Banks*, 67 N. Y., 575; *Curtin v. Barton*, 139 N. Y., 514; *Davis v. State*, 51 Nebr., 301.

The act of 1897 is complete in itself, and as such is a valid exercise of the legislative powers. See *Van Horn v. State*, 46 Nebr., 79; *State v. Whittemore*, 12 Nebr., 252; *State v. Ream*, 16 Nebr., 681; *Stricklett v. State*, 31 Nebr., 674; *Smails v. White*, 4 Nebr., 353; *Sovereign v. State*, 7 Nebr., 409.

HARRISON, C. J.

In this action, commenced in the district court of Lancaster county, the company alleged its corporate organization and existence under the laws of the state, and that the defendants were acting and asserting the right to do certain things as the state board of transportation and its secretaries; that a complaint against the plaintiff company had been filed with the defendants, in which it

was charged it had been demanding and receiving unjust and exorbitant rates and sums for its services as a common carrier; that plaintiff had been notified to appear before the defendants, and answer said complaint; that defendants claimed to have the power and jurisdiction to entertain, hear and determine the matters of said complaint, and to fix and establish the rates of charges to be made and collected by the company for any and all services it might, in the course of its business, perform. It was further pleaded that the body, known as the board of transportation, was an unconstitutional one, the act under which it was asserting power to regulate the business affairs of the company in regard to rates being unconstitutional; that, "under color of their pretended offices, and under color of the said several acts of the legislature, the said defendants are now about to proceed against your petitioner for the purpose of fixing, establishing and reducing your petitioner's rates of charges for the services it performs for the public. The said defendants now threaten, and are about to proceed, to execute the said several acts of the legislature of the state of Nebraska, and enforce the provisions of the same against your petitioner, and will proceed unless restrained; against all of which your petitioner is without adequate remedy at law." The prayer was that the defendants be enjoined from proceeding further in the matter before them.

A temporary injunction was allowed. On hearing, a general demurrer to the petition was sustained, the injunction dissolved, and the action dismissed. The plaintiff has perfected an appeal to this court.

In the case of *Nebraska Telephone Co. v. Cornell*, 58 Nebr., 823, the same questions were raised in the district court, and in like manner—*i. e.*, by general demurrer to the petition. One point in that case was in regard to right of equitable relief. The point is also urged in this case, and a brief filed in support of a motion for a rehearing in the former case is presented in this case in reply

to the argument in behalf of the appellees. It is now contended that the former opinion was radically wrong, and that in it there was a failure to recognize the doctrine of this court as announced in the decision in the case of *Stahlhut v. Bauer*, 51 Nebr., 64. We have examined this question again generally, and particularly with a view to the applicability and governable strength properly to be given or accorded herein to the rule therein stated. We were satisfied with the conclusion in that case, and the reasons for the decision, and are at present of the same mind in regard to them, and adhere to them, and will say further that, with the existent conditions of the present case, the facts sufficiently pleaded, admitted by the demurrer, the case is clearly and unmistakably within the doctrine of the *Stahlhut-Bauer* decision, and that there is no ground for a distinction between them. In *Nebraska Telephone Co. v. Cornell* we viewed the petition as pleading at most a projected hearing, the preliminary notices for which had been served, and that the true sense of the allegations was of a possible outcome or determination adverse to the company; but we are now satisfied that we were wrong. Fairly read and construed, there were pleaded in the petition in that case—and this applies to the case at bar—a total want or lack of power or jurisdiction in the trial body, the proceedings begun and being prosecuted, and a direct result which would be of damage to the complainant, and for which the remedy at law would not afford adequate relief, or not to the extent relief could be afforded in the equitable action, and the latter was proper.

One of the points of argument is relative to the constitutionality of what is denominated "the State Board of Transportation"; the main point made here being that, under the provisions of our constitution, no such board could be created or have an existence. The sections of the constitution to which attention is directed in the line of argument pursued are as follows: "The powers of the government of this state are divided into three

distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." See Constitution, art. 2, sec. 1. "The executive department shall consist of a governor, lieutenant governor, secretary of state, auditor of public accounts, treasurer, superintendent of public instruction, attorney general, and commissioner of public lands and buildings, who shall each hold his office for the term of two years from the first Thursday and. [after] the first Tuesday in January next after his election, and until his successor is elected and qualified; Provided, however, that the first election of said officers shall be held on the Tuesday succeeding the first Monday in November, 1876, and each succeeding election shall be held at the same relative time in each even year thereafter. The governor, secretary of state, auditor of public accounts, and treasurer, shall reside at the seat of government during their terms of office, and keep the public records, books and papers there, and shall perform such duties as may be required by law." See Constitution, art. 5, sec. 1. "No other executive state office shall be continued or created, and the duties now devolving upon officers not provided for by this constitution shall be performed by the officers herein created." See Constitution, art. 5, sec. 26.

In the year 1883 the house of representatives of the legislature requested of the judges of this court an opinion by which answers would be given to the following questions:

"This was a matter coming before the court by the following document:

" 'Whereas, The constitutionality of the railway commissioner system has been questioned, and there are differences of opinion among the members of this legislature as to the construction of section 26 of article 5 of the constitution of the state of Nebraska, which provides that

"no other executive state office shall be continued or created,"

" 'Therefore be it Resolved, That the members of the supreme court of this state be, and hereby are, respectfully requested to answer the following questions:

" '1st. Would railway commissioners be state executive officers, or would the office of railway commissioner of the state be a state executive office if created by the legislature?

" '2d. Would such an office, if created by the legislature, come within the inhibition of the constitution?

" '3d. Would a law regulating the management of railroads in Nebraska under the commissioner system be obnoxious to any provision or provisions of the constitution of this state?

" '4th. In your opinion could such a railroad commissioner law be framed that would be capable of enforcement?

" 'You are most respectfully requested to answer the above and foregoing questions in full at your earliest possible convenience.

" 'I certify the above to be a correct copy of the resolution adopted by the house of representatives on January 22, 1883.

" 'BRAD D. SLAUGHTER, Chief Clerk.

" 'Lincoln, January 23, 1883.' "     See 15 Nebr., 679.

It was then stated as the opinion of the judges (Hon. Geo. B. Lake, then chief justice, and Hon. Amasa Cobb and Hon. Samuel Maxwell, judges): "The legislature has no power under the constitution to create railroad commissioners. The supervision of railroads by a commission would be proper, but the power must be conferred on executive officers already existing." See 15 Nebr., 679. "In answering the former questions, we have seen that all executive power must be enforced by the officers provided for by article 5, as constituting the executive department, and that the powers imposed upon railroad commissioners by the statute of the state of Iowa (and

we presume the same to be of other states which have resorted to similar legislation) are executive, we know of no constitutional inhibition to the imposition of additional executive power, as such, upon any or either of the officers constituting the executive department, and we do think it within the scope of legislative wisdom to frame a law for the regulation of the management of railroads under the commissioner system, with the above limitation as to the *personnel* of the commissioners, and within the limits of the constitutional powers of government over private or corporate rights, which would be capable of enforcement." See 15 Nebr., 683.

The attorney for the company and the attorney general, who appears for the state, call attention to the fact that the opinion to which we have referred was not announced in any pending cause, but in response to queries, and is not entitled to the weight and consideration to be accorded a decision in an actual matter of litigation; and they agree in the belief that the opinion is unsound and erroneous, but on different points and for diverse reasons. The latter vigorously and ably assails the portion of the decision which effectually negatived the proposition by, which was disclosed the possible or contemplated creation of railroad commissioners as officers, and urges that the constitution does not prohibit the creation by the legislature of a board of transportation, and the authorization of their selection from the body of electors and persons other than those executive state officers named in section 1 of article 5 of the constitution. A somewhat fascinating question for study is outlined and presented in this brief; but we must decline to enter upon it or to indulge in it, for reasons which we deem sufficiently strong, the main one of which is that it is not of the matters of litigation in this case, and we have not time, inclination, nor would it be of any avail, to pass upon this point here, as what we might say, being upon a subject not involved, would not be decisive.

It is contended for the company that "The act of 1887,

by which was created the board of transportation and its powers defined, is in conflict with section 26 of article 5 of the constitution, which prohibits the creation of any state office other than those named in the constitution; and is also in conflict with section 2 of article 5, which provides that none of the officers of the executive department shall be eligible to any other state office." The act of 1887 provided as follows: "The attorney general, secretary of state, auditor of public accounts, state treasurer, and commissioner of public lands and buildings shall constitute a board of transportation, which board shall have power by a four-fifths vote to appoint three (3) secretaries to assist in the performance of the duties of said board, and they shall each be paid a salary of two thousand ($2,000) dollars per annum. Not more than two of the secretaries shall be appointed from the same political party. The secretaries of the board shall take the oath of office prescribed for state officers, and shall enter into bonds, to be approved by the governor, in the sum of ten thousand ($10,000) dollars, conditioned for the faithful performance of their duties. No persons in the employ of any railroad corporation, or holding stock in any railroad corporation, shall be employed as secretary." See Session Laws, 1887, ch. 60, sec. 11; Compiled Statutes, 1899, ch. 72, art. 8, sec. 11. And section 22, article 8, chapter 72, of Compiled Statutes, 1899, is as follows: "To carry out the provisions of this act without undue burden to the state officers who compose the board of transportation, their secretaries are hereby empowered, in all matters of examination or investigation, to perform the duties prescribed for the board themselves; *Provided*, That all final decisions shall be made by the board themselves."

It is asserted that the creation of the board and the provision for its secretaries are violations of the sections of the fundamental law of the state, to which we have just referred, or are evasions of them so violent as to be, in effect, violations. The attorney general says that they may be evasions in fact, but are not so in law, which may

be sound, but is, it would seem, somewhat dangerous and shaky ground to venture upon—a little unsafe, probably, as governmental doctrine, to say the least.

It is insisted for the company that the parties who occupy the offices designated by the law of 1887 are made members of the board of transportation as individuals, and not as officers; that they are not required or empowered to act as officers, but as an organized board; that the secretaries are charged with the performance of all the duties, and are in fact the members of the board, and in reality state officers. It is further argued that the duties are such as can not be said to naturally fall to any one of the officers named, and are wholly foreign to the matters which we recognize as distinctively to be given attention by some certain officers to the exclusion of all others. It is true that there are duties connected with the transaction of the government of a state which, by their very inherent qualities or elements, are for an attorney general to perform, and others which as certainly pass to the auditor for adjustment; and so with the other offices and officers. But there are others, of which it may truly be said that they do not, by nature or characteristics, classify, define or assign themselves. They are *blends*, if I may use the term in this connection, having some distinguishing elements which would apparently place them within the proper province of one office or officer, and some traits which would send them to another or three or more others, but the duties to be performed all executive or administrative in their characters. The duties assigned by the law of 1887 are clearly executive or administrative; so much of the former that it is no violence to any principle of right or true government that their doing be cast upon the corresponding, the executive department.

We are unable to agree that the law of 1887 makes the individuals members of the board. Its fair construction is of the officers, as distinguished from the individuals, and the duties cast upon them as officers; nor do we deem

it material that the law denominates the officers, collectively considered, a board, and speaks of actions as by the board as a body.  The matters of performance are no less the acts of each single officer, a member of the board, than they are of the aggregate or whole body. We do not deem it fatal to the law that secretaries are provided for by it.  They may as well have been called deputies.  It was entirely necessary and proper that some method be pointed out and the means of relief of the principals from some of the burdens cast upon them be furnished.  If the duties could be required of the officers designated, there was nothing incorrect or unconstitutional in giving them secretaries, if considered necessary, to perform such of the duties as might be legally done by assistants of the character stated.

We will now turn to what we consider are apparent matters of support of the action of the legislature; also to some matters which have given the law recognition as a valid exercise or expression of the legislative will.  It is unquestionable that the constitution prohibits the creation of any state office other than those specially designated in that instrument; and an indication was given of what must be done in regard to the duties which were then being performed by officers who were not of the ones named in the constitution when it was stated that they must be assumed by the officers created by the constitution.  See sec. 26, art. 5, *supra.*  In section 1, article 5, wherein the executive department is defined and its officers named, it was provided that such duties should be performed by the officers as required by law.  Strictly speaking, it may probably be said that, in express terms, in the section this is made applicable to but four of the officers; but the true sense of the section is that each and all of the state officers shall perform such duties as may be required by law, confined, of course, to duties properly assignable to the executive department.  The constitution makers sealed the doorway to any more executive state offices, and must have done so, knowing and contem-

plating the future growth and development of the state and the consequent birth and existence of further duties; and their manner of disposition of them was that the constitutional officers should attend to them. In the decision, *In re Railroad Commissioners, supra,* the right of the legislature to do what afterward was done in the law under discussion was recognized, and one of the judges who concurred in that opinion was a member of the constitutional convention, and must have known what was the import of the constitution, as he listened to, and participated in, the debates and considerations of its different sections, and gathered information of reasons underlying, and the meaning embodied, in them, which doubtless was remembered more or less distinctly at the time of the opinion. In three cases in which decisions of this court have been rendered the authority and power of this board to act have been sustained. See *State v. Fremont, E. & M. V. R. Co.,* 22 Nebr., 313; *State v. Fremont, E. & M. V. R. Co.,* 23 Nebr., 117; *State v. Missouri P. R. Co.,* 29 Nebr., 550.

The validity or constitutionality of the law of the creation of the board was not discussed. It was necessarily involved, as, if the law was invalid, there would exist no authority by it to act. We are satisfied that the law is not invalid for being, in the particulars noticed in the attack herein made upon it, repugnant to the provisions of the constitution, to which attention has been challenged, and that in the cases cited it has been, in effect, declared not invalid.

In 1897 there was passed an act, in section 1 of which it was provided: "That from and after the passage of this act, all persons or companies owning, controlling or operating, or that may hereafter own, control or operate a line or lines of express, telephone or telegraph, whose line or lines is or are, in whole or in part, in this state, shall be under the control of the board of transportation of this state, who shall have the same power to regulate the prices to be charged by any company or person or per-

sons owning, controlling or operating any line or lines of express, telephone and telegraph, for any services performed by such company, person, or persons as they may have over railroad companies and other public carriers; and all the powers given to said board of transportation over railroads in this state by law are hereby declared to be of force against corporations, companies, or a person, or persons owning, controlling or operating a line or lines of express, telephone and telegraph, doing business in this state, whose line or lines is or are, wholly or in part, in this state, so far as the provisions of said act can be made applicable to any corporation, company, person or persons owning, controlling or operating a line or lines of express, telephone and telegraph." See Session Laws, 1897, p. 303, ch. 56, sec. 1; Compiled Statutes, art. 8, ch. 72, sec. 24. It was argued that this act was unconstitutional, for that it was amendatory of the former, especially that of 1887, and did not contain any section or sections amended, nor repeal such section or sections; hence was inimical to section 11 of article 3 of the fundamental law of the state. The last mentioned section reads, in part: "No law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed." We have examined the citations for the company on this point, and do not deem them entirely applicable. The majority, if not all, of them sustain the proposition that a law which materially adds to or takes from a pre-existing law is amendatory in its character; but, as we view the enactment under discussion, it did neither. It but placed the companies, to which it was made applicable, under the supervision of certain officers, cast further duties upon the latter, and for the extent of their jurisdiction or power, and the manner of procedure in its exercise, refers to another law of prior existence. This was not fatally objectionable legislation. There was passed by the legislature in 1893 (Session Laws, 1893, p. 164, ch. 24; Compiled Statutes, 1899, ch. 72, art. 12) what was

known as the Maximum Rate Law, the object of which was to regulate railroads, to classify freights, to fix reasonable maximum rates to be charged for the transportation of freights upon railroads in this state, and to provide penalties for the violation of the act. The act contained and established a schedule of rates. In section 6 of the act it was provided: "That the board of transportation is hereby empowered and directed to reduce the rates on any class or commodity in the schedule of rates fixed in this act whenever it shall seem just and reasonable to a majority of said board so to reduce any rate; and said board of transportation is hereby empowered and directed to revise said classification of freight as hereinbefore in this act established whenever it shall appear to a majority of said board just and reasonable to revise said classification; *Provided,* That said board of transportation shall never change the classification in this act established, so that by such change of classification the rates on any freight will become higher or greater than in this act fixed. When any reduction of rates or revision of classification shall be made by said board, it shall be the duty of said board to cause notice thereof to be published two successive weeks in some public newspaper published in the city of Lincoln, in this state, which notice shall state the date of the taking of effect of such change of rate or classification, and said change of rate or classification so made by the said board and published in said notice, shall take effect at the time so stated in said notice." See Session Laws, 1893, p. 346, ch. 24, sec. 6. It is asserted this operated as an amendment of the law of 1887 in regard to the powers of the board of transportation, and that after the passage of the later act, that of 1893, the board could not act in respect to rates except as provided in the section just quoted, and, this being true, it had no authority to do anything more than to reduce the rates as provided in schedule of the act of 1893, and possessed only such powers when the act of 1897 was passed which purported to

place under the control of the board the appellant and other similar corporations; that the power to reduce the rates as fixed by the schedule of 1893, could in nowise effect or be operative upon the appellant, or the rates charged by it for services, and consequently the board was without authority to act in relation to appellant's rates. The attorney general says to this that the act of 1893, as to the rates fixed by it, was declared unconstitutional by the supreme court of the United States, in the decision of the case of *Smith v. Ames*, 18 Sup. Ct. Rep., 424, known as the Maximum Freight Rate Case. Counsel for appellants answer that the law, to the extent that it established rates, was declared inoperative for the time being, and the act was not adjudged invalid. To say the least, the law was left in a condition which may be not inaptly described by the use of the somewhat current term "innocuous desuetude." It was announced that the rates fixed by the law, under the existent material business conditions in Nebraska, were so low as to be unreasonable, and the law, in the portions which affected rates, was declared, for the reason stated, unconstitutional and inoperative, and so it has been since and is to-day. The passage of the schedule of rates was unquestionably the main inducement for, and object of, the passage of the law; and, moreover, the section, No. 6, without operation in regard to the rates of the law in which it appeared, was without meaning or force, and passed out of effectual existence with the rates portion of the law with which it was inseparably connected. The maximum rate law, to the extent it was submitted to the decision of the supreme court of the United States, is now unconstitutional, and its condition can not interfere with, or modify, the laws of 1887 or 1897, if it be conceded they might have had such effect, which we do not decide. It follows, from the conclusions herein reached, that the judgment of the district court was right, and it is

AFFIRMED.

NORVAL, J., dissenting.

I dissent from the propositions stated in the second and fourth paragraphs of the syllabus of the opinion of the chief justice in this case. The law herein assailed (Compiled Statutes, 1899, ch. 72, art. 8) has constituted the attorney general, secretary of state, auditor of public accounts, state treasurer and commissioner of public lands and buildings a board of transportation. In my view, this legislation is unconstitutional, at least to the extent that the attorney general and commissioner of public lands and buildings are included as members of said board, and I will briefly state the reasons for this conclusion. · By section 1, article 5, of the constitution eight executive state offices were created, consisting of the governor, lieutenant governor, secretary of state, auditor of public accounts, treasurer, superintendent of public instruction, attorney general and commissioner of public lands and buildings. This section closes with the significant provision that "The governor, secretary of state, auditor of public accounts, and treasurer shall reside at the seat of government during their terms of office, and keep the public records, books, and papers there, and shall perform such duties as may be required by law." Thus the framers of the constitution, and the people in adopting it, have said that four of the eight officers of the executive department shall not only reside at the capital of the state, but shall discharge such duties as the law may require them to perform—that is, duties outside of, and not pertaining to, their respective offices. As to the four other executive state officers, namely, the lieutenant governor, attorney general, superintendent of public instruction and commissioner of public lands and buildings, the constitution does not require that they, or either of them, shall reside at any particular place in the state. Manifestly they are at liberty to choose their own place of abode. Nor does the fundamental law declare that they "shall perform such duties as may be re-

quired by law," as is specified concerning the governor, secretary of state, auditor of public accounts and treasurer. If each and all of the eight executive state officers may be required to perform any duty imposed by statute, then the wording of said section is meaningless, and the framers thereof did a useless thing in inserting the same in the constitution. It is just as logical to say that section 1 requires all executive state officers to reside at the capital as to hold that each and all of them shall discharge the duties which the legislature may see fit to impose upon them. The naming the four executive officers who should "perform such duties as may be required by law" was a limitation upon the powers of the legislature, and prevented that department of the state government from enacting laws requiring either the lieutenant governor, attorney general, superintendent of public instruction or commissioner of public lands and buildings to perform any official duties not within the scope of his respective office. Any other interpretation or rendering of the constitutional provision would do violence to its grammatical construction, and would involve the proposition that the legislature could make the lieutenant governor a member of the board of transportation, and, by duties devolving upon him by statute, require the giving of his entire time and services to the state for twice the compensation of a senator, or $600 for the period of two years. Likewise, the legislature might pass a law requiring the superintendent of public instruction to act as a member of said board or to devote the principal part of his time in the discharge of duties not belonging to, or in any manner connected with, his constitutional office, to the detriment of the educational interests of the state. So by legislation there may be required of the attorney general that he shall discharge various additional duties outside and not within the scope of his office, and thereby interfere with the performance of the duties imposed by the constitution, and to the material detriment of the legal interests of the state. The framers of the consti-

tution never so contemplated, but rather that the lieutenant governor, attorney general, superintendent of public instruction and commissioner of public lands and buildings should only be required to perform such duties as pertain to, or are within the scope of, their respective offices. In my view, therefore, the act creating the board of transportation violates section 1, article 5, of the constitution, by including the attorney general and commissioner of public lands and buildings as members of said board.