NEBRASKA TELEPHONE COMPANY, APPELLANT, v. JOHN F. CORNELL ET AL., APPELLEES.

FILED MARCH 7, 1900.   No. 10,417.

1. Executive Offices: CONSTITUTIONAL LAW.   The act of 1887 (Session Laws, ch. 60), creating the board of transportation and defining its powers, is not in conflict with section 26, article 5, of the constitution, which forbids the legislature to create any executive state office.

51

2. ———: ———. Nor is it in conflict with section 2, article 5, of the constitution, which declares that no executive state officer shall be eligible to any other state office.

3. **Board of Transportation:** POWERS. The state board of transportation has power to inquire into the intra-state business of express, telephone and telegraph companies and to regulate their rates therefor.

4. **Maximum Rate Law:** DEFINITION OF DUTIES. The act of 1893, known as the "Maximum Rate Law" (Session Laws, ch. 24), does not materially modify the provisions of the law enacted in 1887 (Session Laws, ch. 60), defining the duties and powers of the state board of transportation.

5. ———: VALID ACT: PRESUMPTION. The enactment of 1893, known as the "Maximum Rate Law" (Session Laws, ch. 24), appears upon its face to be a constitutional and valid act; and there is no presumption that its immediate execution would deprive freight carriers of their property without due process of law, or deny them the equal protection of the laws.

6. ———: JUDICIAL COGNIZANCE: ASSUMPTION WITHOUT PROOF: CONFISCATORY LEGISLATION. This court does not take judicial cognizance of the net earnings of railroad companies, and can not assume, without proof, that the "Maximum Rate Law" (Session Laws, 1893, ch. 24) is now, or was at the time of its enactment, confiscatory legislation.

7. **Judgment:** STRANGERS TO RECORD. A judgment is binding only between the parties to the action in which it was rendered. It is of no force between other litigants.

8. **Disapproval.** The seventh point in the syllabus of *Pacific Express Co. v. Cornell*, 59 Nebr., 364, 81 N. W. Rep., 377 is disapproved.*

9. **Board of Transportation:** STATUTE: JURISDICTION. The jurisdiction of the board of transportation under the act of 1897 (Session Laws, ch. 56) is not limited to the regulation of specific charges for messages sent from one point to another within the state. The regulation of telephone rentals is also within the powers of the board.

10. **Statutes:** CONSTITUTIONAL LAW. The act of 1897 (Session Laws, ch. 56), empowering the board of transportation to regulate the

---

*The seventh point of the syllabus above cited is as follows: "The law of 1893, known as the 'Maximum Rate Law,' or the portion thereof which contained the schedule of rates, was declared unconstitutional, under the then existent conditions, by the supreme court of the United States. This carried with it section 6 of the act, which could have no operation except in connection with rates as fixed in the schedule. Such law is now as if non-existent, and does not interfere with the enforcement of the law of 1897, to which we have referred, by the board and in the method provided in the law of 1887, to which we have hereinbefore alluded."—REPORTER.

charges of express, telephone and telegraph companies, is an original and independent statute and is not violative of section 11, article 3, of the constitution respecting amendatory legislation.

APPEAL from the district court of Lancaster county. Heard below before CORNISH, J. *Affirmed.*

*Adolphus R. Talbot* and *W. W. Morsman,* for appellant.

*W. W. Morsman,* for appellant, argued orally that the act of 1887, creating the board of transportation and defining its powers, is in conflict with section 26 of article 5 of the constitution, which prohibits the legislature from creating any other executive state office than those defined in the constitution, and is also in conflict with section 2 of article 5, which provides that none of the officers of the executive department shall be eligible to any other state office.

Counsel cited, at length, *In re Railroad Commissioners,* 15 Nebr., 679; and argued that this opinion was, of course, entitled to consideration, but it did not have the force of a decision by this court. It was not a judicial decision. There was no case before the court. It was not argued by counsel representing conflicting interests. It was the opinion of disinterested judges, to be sure, but unaided by counsel or litigants interested in the result. Nothing but conflict of interest, the diligence and zeal of counsel, supplemented by the best judgment of the court, could produce results that are entitled to be accepted as authority.

"The secretaries are empowered, in all matters of examination or investigation, to perform the duties prescribed by the board themselves, with the proviso that all final decisions shall be made by the board themselves. See section 22. This was the creation of a new executive office.

"When the people adopted the constitution, they created, by section 1, article 5, the constitutional office of attorney general, with such governmental powers or functions as might be appropriately assigned to that

office. This was the obvious legal effect of the provision, implied from the title given to the office. The scope and character of the functions allotted to that office and to be performed by the attorney general were as certainly defined and limited by the title which was given to the office, as if these functions and powers had been expressed in detail. The constitution did not create the officer, or incumbent of the office, but provided for his election by the people. The same is true of the offices of secretary of state, auditor of public accounts, state treasurer and commissioner of public lands and buildings. An office, in the sense of the constitution, is that portion of the sovereignty of the state—those governmental powers, which, being segregated from the remainder, are allotted for execution or exercise by some person or persons to be chosen to the office. There is a clear distinction between the office and the officer.

"At the time of the passing of the act of 1897 (Compiled Statutes, 1897, ch. 72, art. 8, sec. 23) whatever power the board of transportation previously had, under the act of 1887, to regulate rates, had been repealed by the act of 1893, known as the 'Maximum Rate Law'; and, therefore, chapter 56 of the Laws of 1897 was ineffectual to confer upon the board the power to regulate the rates to be charged by the appellant." Counsel cited *State v. Fremont, E. & M. V. R. Co.*, 22 Nebr., 313, 23 Nebr., 117, and referred to it as a clear case of judicial legislation which seemed to have been accepted by the legislature in an amendatory act passed in 1897.

The act of 1897, chapter 56, by its express terms, limits the power to regulate charges for messages sent.

The act of 1897 (chapter 56) was an amendatory act, and did not contain the section or sections amended, and did repeal such section or sections, and was, therefore, unconstitutional and void. Counsel here cited *People v. McCallum*, 1 Nebr., 195; *Smails v. White*, 4 Nebr., 353; *Sovereign v. State*, 7 Nebr., 409; *State v. Corner*, 22 Nebr., 265; *In re House Roll 284*, 31 Nebr., 505; *Stricklett v.*

*State*, 31 Nebr., 674; *Trumble v. Trumble*, 37 Nebr., 340; *State v. County Commissioners of Douglas County*, 47 Nebr., 428; *Morgan v. State*, 48 Nebr., 798; *State v. Moore*, 48 Nebr., 872; *Lancaster County v. Hoagland*, 8 Nebr., 37; *City of South Omaha v. Taxpayers' League*, 42 Nebr., 678; *German-American Fire Ins. Co. v. City of Minden*, 51 Nebr., 870; *Board of Education v. Moses*, 51 Nebr., 288; *State v. Moore*, 48 Nebr., 870; *State, ex rel Graham, v. Tibbets*, 52 Nebr., 228. This line of decisions, covering the period from the very organization of this court down to the present time, had not been broken by a single contrary decision, nor weakened by a single dissent.

The record clearly showed the inadequacy of any remedy at law. The attorney general contended here, as he did in the *nisi prius* court, that any order which might be made by the board of transportation fixing and establishing rates for the appellant could not be enforced by the board without resort to some judicial tribunal for mandatory process, in which proceeding the appellant could make his defense; therefore the remedy at law was inadequate. But this was a mistake. It was not sufficient that there be a remedy at law. It must be as adequate, practicable and efficient to the ends of justice as the remedy in equity.

Counsel cited *Boyce v. Grundy*, 3 Pet., 210; *Sullivan v. Portland*, 94 U. S., 806; *Wylie v. Coxe*, 15 How. [U. S.], 415; *Tyler v. Savage*, 143 U. S., 79; *Richardson Drug Co. v. Meyer*, 54 Nebr., 319; *Miller v. Drane*, 75 N. W. Rep. [Wis.], 413; *Kilbourn v. Sunderland*, 130 U. S., 505.

It is a settled question of law that, where public officers are proceeding illegally and under claim of right or color of office, a person injured may have an injunction. Counsel cited *Board of Liquidation v. McComb*, 92 U. S., 531; *Davis v. Grey*, 16 Wall. [U. S.], 203; *Osborn v. Bank*, 9 Wheat. [U. S.], 738; *Pennoyer v. McConnaughy*, 140 U. S., 1; *Johnson v. Hahn*, 4 Nebr., 139; *Morris v. Merrell*, 44 Nebr., 428; *Mohawk & H. R. R. Co. v. Artcher*, 6 Paige

Ch. [N. Y.], 83; *Belknap v. Belknap*, 2 Johns. Ch. [N. Y.], 472; *Livingston v. Livingston*, 6 Johns. Ch. [N. Y.], 497; *Hamilton v. Cummings*, 1 Johns. Ch. [N. Y.], 516; *Hughes v. Trustees*, F. Vesey Sr. [Eng.], 188; *City of Omaha v. Mcgeath*, 46 Nebr., 511.

*Constantine J. Smyth, contra.*

The attorney general filed the same brief as was filed in the *Pacific Express Co. v. Cornell* case, reported in 59 Nebr., 364. He argued that that part of section 26 of article 5 of the constitution which provides that no other executive office shall be continued or created did not prohibit the legislature from creating a board of transportation, and authorizing the governor to appoint the members thereof from outside of the executive state officers named in section 1 of the same article. "If the legislature has the power to create a board of transportation, and to authorize the executive to appoint the *personnel* of such board out of persons not executive state officers within the meaning of section 1, article 5, of the constitution, then not only the first part of the first point stated by the appellant but the second part as well must fall. See *In re Railroad Commissioners*, 15 Nebr., 679. The reasons upon which the opinion in that case stands, summarized, are as follows: The judges first assumed that the powers to be conferred on the new commissioners would be the same as those conferred on the Iowa commission. Hence they would receive salaries out of the state treasury; and, in many respects, their duties would be coextensive with the territorial limits of the state. From these premises they reasoned that the commissioners would be state officers. Since they would be state officers, their power must be referred to either one or the other of the three departments into which the state government has been divided by the constitution, to-wit, the legislative, the executive and the judicial. Inquiry follows as to which of the depart-

ments they would belong. It is concluded that they would be executive state officers. The position is untrue, because it proves too much. The office of policeman and the office of constable are executive state offices. Since the adoption of the constitution the legislature has provided for the creation of many new policemen and new constables. If it be urged that neither the policeman nor the constable draws his salary out of the state treasury, how about the sheriff? He surely is an executive state officer. Considerable of his compensation comes out of the state treasury, to-wit, for conveying prisoners to the penitentiary." See Compiled Statutes, ch. 86, sec. 36. When, under the provisions of section 518 of the Criminal Code, he conveyed prisoners to the penitentiary, he had jurisdiction in any part of the state in which the performance of his duty brought him, as when he served criminal process outside of his own county. The superintendent of the school for the deaf and dumb, the superintendent of the Lincoln insane asylum, the superintendent of the Kearney industrial school, the commandant of the soldiers' home and the chancellor of the state university were all state officers. They were not legislative; they were not judicial; therefore they must be executive officers—according to the opinion of the judges. Each one, as regularly as the law permitted him, drew his salary out of the state treasury, and each one, so far as the work of his institution was concerned, exercised jurisdiction coextensive with the territorial limits of the state. What difference was there in principle between the duties which would be imposed upon a board of railroad commissioners and those imposed upon the warden of the penitentiary, the chancellor of the university or the superintendent of any one of the many state institutions? The fact was these last were administrative offices merely. So were the board of secretaries. The secretaries, the attorney general said, were, as he viewed them, merely the arms of the executive department of government.

The attorney general cited *State v. Weston*, 4 Nebr., 234; *State v. Smith*, 35 Nebr., 25; *Moore v. State*, 53 Nebr., 831.

The creation of a board of transportation out of state officers is not the creation of an office distinct from the several offices of the officers composing the board. See *State, ex rel. Attorney General, v. Judges*, 21 O., 1.

The law providing for the secretaries of the board of transportation was not unconstitutional. To say so would be to say that the law creating deputies to state officers or permitting employment of clerks in any of the state offices is unconstitutional. The validity of the law was before this court on three different occasions, and on each occasion was sustained. See *State v. Fremont, E. & M. V. R. Co.*, 22 Nebr., 313, 23 Nebr., 117.

At the time of the passage of the act of 1897, whatever power the board of transportation previously had under the act of 1887, to regulate rates, had not been repealed by the act of 1893, known as the "Maximum Freight Rate Law," and, therefore, the act of 1897 was not ineffectual to confer upon the board the power to regulate the rates to be charged by the appellant. See *State v. Fremont, E. & M. V. R. Co.*, 22 Nebr., 313, 23 Nebr., 117; Compiled Statutes, 1897, ch. 72, art. 8, sec. 23 and construction of appellant's counsel thereon.

The act of 1897, by its express terms, does not limit the power to regulate charges of telephone companies for messages sent. The act of 1897 is not an amendatory act, and hence the argument by appellant's counsel, that the act for that reason is unconstitutional, must fail. See *Campbell v. Board of Pharmacy*, 45 N. J. Law Rep., 245; *De Camp v. Hibernia R. Co.*, 47 N. J. Law Rep., 43; *German-American Fire Ins. Co. v. City of Minden*, 51 Nebr., 870; *People, ex rel. Commissioners, v. Banks*, 67 N. Y., 575. In *Smails v. White* and *Sovereign v. State*, cited by opposing counsel, the court put its decision on the ground that the new act was in conflict with parts of the old. Therefore, those cases supported the position

of the attorney general.  The attorney general drew a distinction between *Board of Education v. Moses,* 51 Nebr., 288, and the case at bar.

The act of 1897 is complete in itself.  See *Van Horn v. State,* 46 Nebr., 79; *State v. Whittemore,* 12 Nebr., 252; *State v. Ream,* 16 Nebr., 681; *Stricklett v. State,* 31 Nebr., 674; *Smails v. White,* 4 Nebr., 353; *Sovereign v. State,* 7 Nebr., 409.

The record clearly showed that the appellant had an adequate remedy at law.  The attorney general could well understand that where a public officer, without any authority of law, or, what is the same thing, under a void law, was proceeding to place a cloud upon a title, he could be enjoined.  One would not be required to wait until the harm was done, and then engage in a long and circuitious proceeding at law to cure the injury.  That, however, was not this case.  Here, before the harm was done, application must be made by the officers to a court at law, in which defendant would have an opportunity of making all his defense.  Not an adjudged case had the counsel cited which was similar to the case before the court for decision.

SULLIVAN, J.

This action was commenced by the Nebraska Telephone Company in the district court of Lancaster county to enjoin the members of the board of transportation and their secretaries from taking cognizance of a complaint presented to them by John O. Yeiser, and from assuming to exercise jurisdiction under the provisions of chapter 56 of the Session Laws of 1897.  A more extended statement of the facts out of which the controversy has arisen will be found in the former opinion affirming the judgment of the trial court.  See *Nebraska Telephone Co. v. Cornell,* 58 Nebr., 823, 80 N. W. Rep., 43.  On motion of appellant a rehearing was allowed, and the cause having been reargued is again submitted. We have read with great interest the very able and im-

pressive arguments presented by counsel, for both parties, and have endeavored to give the case the careful and thorough consideration which the importance of the questions involved entitles it to receive. After much reflection the conclusion reached · is that, while the reasons given for the former decision require revision, the judgment of affirmance is right and should be adhered to.

On the first submission it was held (the writer dissenting) that the plaintiff's petition did not disclose a right to equitable relief, assuming the legislation relative to the board of transportation to be valid. This holding was wrong, and we afterwards so decided in *Pacific Express Co. v. Cornell,* 59 Nebr., 364, 81 N.. W. Rep., 377.

This question being out of the way, we will give attention to the arguments touching the authority of the defendants to inquire into the business of the plaintiff; and to reduce its charges in case the same are found to be excessive or unjust.

On behalf of the company it is contended that the act of 1887 (Session Laws, ch. 60), creating the board of transportation and defining its powers, is in conflict with section 26 of article 5 of the constitution, which in terms forbids the creation by the legislature of any executive state office. It is also claimed that the act clashes with section 2 of article 5 of the constitution, which declares that none of the state officers of the executive department shall be eligible to any other state office. These questions are not now presented to this court for the first time. As early as 1883 they were considered by the learned judges who at that time constituted the court. In an advisory opinion then given, at the request of the house of representatives, it was declared by those judges that legislation of the character now under consideration would not trench upon the supreme law. See *In re Railroad Commissioners,* 15 Nebr., 679. We are aware that this case is not a decision in the technical sense of

the term.  But it represents, nevertheless, the best judg-
ment of the members of the court upon a matter likely
to come before them at some time for adjudication.  It
has been acquiesced in and accepted by every depart-
ment of the government, and by the people, as a guide
of conduct and a rule of action.  To discredit it now
would be to open Pandora's box, and turn loose a brood
of evils, without the means at hand to cope successfully
with them.  This court on several occasions has taken
jurisdiction of causes and decided controversies involv-
ing large interests on the assumption that the act of
1887 was a valid and enforceable law.  See *State v. Fre-
mont, E. & M. V. R. Co.*, 22 Nebr., 313, 23 Nebr., 117; *State
v. Missouri P. R. Co.*, 29 Nebr., 550; *Chicago, B. & Q. R.
Co. v. State*, 50 Nebr., 399.

In the recent case of *Pacific Express Co. v. Cornell,
supra*, the question was directly presented for decision,
and it was there held, in an opinion by HARRISON, C. J.,
that the board of transportation was a lawfully consti-
tuted body invested with power to inquire into the busi-
ness of express, telegraph and telephone companies, and
to regulate their rates.  That decision was made in the
light of the arguments now before us, and, upon the
point which we have been considering, must be accepted
as final.

Another contention of the appellant is that the powers
conferred on the board of transportation by the act of
1887 were entirely wiped out by the act of 1893 (Session
Laws, ch. 24), known as the "Maximum Rate Law"; and
that, therefore, the act of 1897, giving the board juris-
diction over express, telegraph and telephone companies,
is incapable of enforcement.  The act of 1887, as con-
strued by this court, invested the board of transporta-
tion with authority to establish rates for the carriage of
freight by railroad companies from one point to another
within the state.

By the act of 1893 the legislature fixed maximum rates
for the transportation by rail of commodities within the

state. The effect of this act was to permit the railroads to charge the prescribed maximum rates, unless the board of transportation should exercise the power conferred upon it by section 6, which, so far as material to the present inquiry, is as follows: "That the board of transportation is hereby empowered and directed to reduce the rates on any class or commodity in the schedule of rates fixed in this act, whenever it shall seem just and reasonable to a majority of said board so to reduce any rate; and said board of transportation is hereby empowered and directed to revise said classification of freight as hereinbefore in this act established, whenever it shall appear to a majority of said board just and reasonable to revise said classification."

The power of the board to regulate freight charges was not, we think, materially changed by the act of 1893. That act authorized a reduction of rates whenever it should seem to the board reasonable and just. In other words, it conferred upon the board authority, within the limits of the law, to fix reasonable rates. The carriers may, of course, reduce their rates below the statutory schedule; and the board of transportation may undoubtedly order a further reduction, if, upon investigation, such rates are found to be excessive. The power granted to the board by each of the acts was power to fix reasonable rates. The act of 1893 condemned all rates in excess of the maximum limit therein prescribed, as extortionate and unjust; and thus narrowed the field of inquiry open to the board. But the power given by the act of 1887 to reduce excessive rates and make them reasonable remained as before. If, therefore, there is an irreconcilable conflict between the two statutes so far as they relate to the regulation of freight rates, the repeal effected by the later act would still leave the board with undiminished power.

In this connection we have occasion to refer again to the case of *Pacific Express Co. v. Cornell, supra.* It was there in effect held that the act of 1893, the "Maximum

Rate Law," never became operative and is not now in force. The act was adopted in accordance with established procedure, and, presumably, was from the beginning a constitutional and valid law. This court has never decided that it was invalid or unenforceable; and there is certainly nothing in the record now before us upon which to ground such inference. We know as a matter of history that the circuit court of the United States decided in the case of *Smyth v. Ames* that the enforcement of the law of 1893 would have been, under circumstances then existing, a confiscation of property of the companies which were parties to that action. We also know of the affirmance of that decision by the federal supreme court; and understand that it is at present a binding adjudication between the parties to the suit. See *Smyth v. Ames*, 169 U. S., 466, 171 U. S., 361. It is not, however, of any force as to other railroad corporations. It may be that the law at the time of its enactment was enforceable against some of the companies, but not against all. Those whose lines are wholly within the eastern part of the state, where the population is comparatively dense and business generally prosperous, may have had no just reason to complain of the maximum charges established by the act of 1893. But, however that may be, it is perfectly clear that we are not warranted in holding, in this case, that the law did not become immediately operative. We could not reach that conclusion without having first determined that the legislation was confiscatory as to all railroads doing business in the state. There is, on the face of the act, nothing whatever to indicate that its execution would deprive freight carriers of their property without due process of law, or deny them the equal protection of the laws; and we are not authorized to take judicial notice of the facts, which it is claimed would establish such deprivation and denial. Neither can we, in pronouncing upon the validity of the statute, be influenced in any way by the judgment in *Smyth v. Ames*. We do not presume

to question the correctness of that judgment. But we can not take it for granted that the evidence will be the same in every other case, in which the constitutionality of this legislation may be challenged. But if it were true that the law did not become effective in 1893, it would not at all follow that it is still forceless and inert. It ought rather to be presumed that it has been vitalized by prosperity and that, under improved business conditions, its once dormant energies have been quickened into action. The statement contained in the seventh point of the syllabus to the case of *Pacific Express Co. v. Cornell, supra,* is obviously unsound and is disapproved.

The next contention of appellant is that the act of 1897, by its express terms, limits the power of the board of transportation to the regulation of charges for "messages sent." The section of the statute bearing upon this point is in these words:

"Sec. 2. That the powers of the board of transportation to regulate charges by corporations, companies and persons herein referred to, shall apply only to charges by express, for transportation from one point to another in this state, and messages sent by telegraph and telephone from one point to another in this state."

This provision was intended, we think, to limit the jurisdiction of the board to intrastate business, and to exclude the possible inference that regulation of interstate commerce was within the contemplation of the lawmaking body. It is said by counsel for the company that the defendants are asserting the right to regulate rentals and not charges for "messages sent." In view of the manner in which telephone companies conduct their business, it is not perceived how it would be practicable to regulate charges for messages sent without at the same time regulating rentals. The business of a telephone company is to transmit messages from one place to another. That is the purpose for which it is brought into existence; it is the only business it is authorized to do; it is the only business it professes to do. The

only service required of it by its customers is the transmission of messages sent to them and by them.    All the instrumentalities employed by the company have for their ultimate object the carrying of messages.   The real thing, and the only thing, for which the customers pay is the transmission of messages, whatever may be the forms in which the charges are made.   In our opinion the legislature did not intend to give the board of transportation jurisdiction over telephone companies for the purpose merely of regulating specific charges for messages sent.

It is finally contended that the act of 1897 is amendatory legislation and as such is violative of section 11, article 3, of the constitution, which provides: "No law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed." This contention can not be sustained.   The law is, in substance, an act to regulate the rates of express, telephone and telegraph companies; and it might, with propriety, have been enacted under that title.   For the accomplishment of the object in view it was in the first section provided: "That from and after the passage of this act, all companies or persons owning, controlling or operating, or that may hereafter own, control or operate, a line or lines of express, telephone or telegraph, whose line or lines is or are, in whole or in part, in this state, shall be under the control of the board of transportation of this state, who shall have the same power to regulate the prices to be charged by any company or person or persons owning, controlling or operating any line or lines of express, telephone and telegraph, for any services performed by such company, person or persons as they may have over railroad companies and other public carriers; and all the powers given to said board of transportation over railroads in this state by law are hereby declared to be of force against corporations, companies or a person or persons owning, controlling or operating a line or lines of ex-

press, telephone and telegraph, doing business in this state, whose line or lines is or are, wholly or in part, in this state, so far as the provisions of said act can be made applicable to any corporation, company, person or persons owning, controlling or operating a line or lines of express, telephone and telegraph." The second, and only other section, has been already noticed. Clearly the act does not profess to do that which is inhibited by the constitution. It does not assume to amend the law of 1887 or any other law; it purports to be, and it is, an original and independent statute. The title of the act of 1887 is: "An act to regulate railroads, prevent unjust discrimination, provide for a board of transportation, and define its duties, and repeal articles 5 and 8 of chapter 72, entitled 'Railroads' of the Revised Statutes and all acts and parts of acts in conflict herewith." This legislation had for its object the regulation of railroad rates. As a means to that end, a board of transportation was created, and its jurisdiction defined. The act of 1897 relates exclusively to express, telephone and telegraph companies, and touches in no way the subject of railroad regulation. Indeed, it is quite evident that, if the act of 1897 had been given the form of an amendment to the act of 1887, it could not be regarded as amendatory; for it would be neither embraced within the title of the earlier statute nor germane to its subject. Since it could not be regarded as amendatory legislation, if it had assumed that character, how can it be said to be amendatory, while professing to be an original and independent measure? It is legislation like that conferring jurisdiction on county courts in other than probate matters (Compiled Statutes, 1899, ch. 20, sec. 2), and like that creating the office of county attorney, and providing for the prosecution of criminal cases by information instead of by indictment. See Code of Criminal Procedure, ch. 54. It is valid legislation, because it does not modify or change in any respect the pre-existing law on the subject of railroad regulation, and, therefore, does not offend

State v. Dickinson.

against the clause of the constitution quoted. If it were decided to be invalid, the principle of the decision would condemn a very considerable part of our statutory law. The question was considered and decided in *Pacific Express Co. v. Cornell, supra,* and with the conclusion there reached we are entirely satisfied. *Campbell v. Board of Pharmacy,* 45 N. J. Law, 241; *State v. Hibernia U. R. Co.,* 47 N. J. Law, 43; *People v. Banks,* 67 N. Y., 568, and *Curtin v. Barton,* 139 N. Y., 505, are instructive precedents on this branch of the case. The judgment of the district court is

AFFIRMED.

NORVAL, C. J., took no part in above opinion.