HIGGINSON et al. v. CHICAGO, B. & Q. R. CO. et al.

(Circuit Court, D. Nebraska. March 22, 1900.)

1. CARRIERS—BOARD OF TRANSPORTATION—MAXIMUM RATE LAW.
   The act of the Nebraska legislature adopted in 1887, creating a board of transportation, and vesting such board with certain powers, was not repealed by the act of 1893 known as the "Maximum Rate Law."

2. SAME—INJUNCTION.
   The injunction granted in this case by the supreme court was based upon the finding that the maximum rates prescribed by the act of 1893, when considered as an entirety, would not yield to the carrier a reasonable compensation.

3. SAME.
   The injunction did not restrain the board of transportation from inquiring into and fixing a reasonable rate for specific or particular articles.

4. SAME.
   It is not necessary for the board of transportation to apply for a modification of the injunction to enable them to perform acts which were not included in the restraining order.

   (Syllabus by the Court.)

J. M. Woolworth and W. D. McHugh, for complainants.
C. J. Smyth, Atty. Gen., for defendants.

MUNGER, District Judge. In 1887 the legislature of Nebraska passed an act entitled:

"An act to regulate railroads, prevent unjust discrimination, provide for a board of transportation and define its duties, and repeal articles 5 and 8 of chapter 72, entitled 'Railroads,' of the Revised Statutes, and all acts and parts of acts in conflict therewith." Laws 1887, p. 541.

By this act a board of transportation was created, and invested with certain powers. Under said act the board had authority to determine and fix just and reasonable charges for services rendered or to be rendered by railroad companies within the state. State v. Fremont, E. & M. V. R. Co., 22 Neb. 313, 35 N. W. 118. In 1893 the legislature passed an act entitled:

"An act to regulate railroads, to classify freights, to fix reasonable maximum rates to be charged for the transportation of freights upon each of the rail-

roads in the state of Nebraska, and to provide penalties for the violation of this act." Laws 1893, p. 164.

The act of 1893 gave to the board power to hear and determine complaints of a violation of the act, to fix and establish reasonable rates for the transportation of freight below the maximum rate prescribed by the act, and imposed upon railroad companies heavy penalties for a violation of the provisions of the act.

In July, 1893, complainants filed their original bill in this case against certain state officers, composing the members of the board of transportation, their secretaries, and the railroad company, respondents herein, seeking to enjoin the board of transportation from attempting to in any manner enforce the provisions of the act of 1893. Upon a hearing the circuit court entered a decree in accordance with the prayer of the bill (64 Fed. 165), which decree was afterwards affirmed by the supreme court (169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819). The judgment and decree of the court were subsequently, and at the same term, modified in some important respects. 171 U. S. 361, 18 Sup. Ct. 888, 43 L. Ed. 197.

Prior to August 10, 1897, the railroads in the state had uniformly made a charge for the transportation of live stock between different points within the state upon the basis of car loads. On that date they changed the method of charges for such services to the basis of cents per 100 pounds. Complaint having been made thereto,—to the board of transportation,—said board, after an investigation, made an order on the 26th of November, 1897, as follows:

"It is therefore by the state board of transportation of the state of Nebraska considered, adjudged, and ordered that the defendant railroads herein shall on or before the 5th day of December, 1897, restore the car-load rate in force prior to the 10th day of August, 1897."

On February 3, 1900, the board of transportation made the following order:

"It is therefore by the board of transportation of the state of Nebraska considered, adjudged, and ordered that the Chicago, Rock Island & Pacific Railway Company, the Chicago, St. Paul, Minneapolis & Omaha Railway Company, the Fremont, Elkhorn & Missouri Valley Railroad Company, the Burlington & Missouri River Railroad in Nebraska, the Sioux City, O'Neill & Western Railway Company, the Union Pacific Railway Company, the St. Joseph & Grand Island Railroad Company, and the Missouri Pacific Railway Company, doing business in this state, reduce the local distance tariff 30% below the distance tariff taking effect December 1, 1894, and now in force, on corn, oats, rye, barley, bran, corn meal, mill feed, mill stuffs, chop, grain screening, oat hulls, oat dust, sorghum seed, melons, oil cake, oil meal, corn and cane fodder (straight car loads), and cotton-seed meal, and that said companies show cause, if any, on the 20th day of February, 1900, why this order should not be enforced."

And on the 8th day of February, 1900, said board of transportation made a further order as follows:

"It is therefore by the state board of transportation of the state of Nebraska considered, adjudged, and ordered that the Chicago, Rock Island & Pacific Railway Company, the Chicago, St. Paul, Minneapolis & Omaha Railway Company, the Fremont, Elkhorn & Missouri Valley Railroad Company, the Burlington & Missouri River Railroad in Nebraska, the Sioux City, O'Neill & Western Railway Company, the Union Pacific Railway Company, the St. Joseph & Grand Island Railroad Company, and the Missouri Pacific Railway

Company. doing business in this state, reduce the rate on cattle ten per cent., and the rate on hogs five per cent., below the rates published and taking effect December 1, 1899, and that they are required to show cause on or before the 1st day of March, 1900, why said order should not be enforced."

Complainants have now filed what is termed a "supplemental and ancillary bill," reciting, in substance, the foregoing facts, and praying that said orders of the board of transportation, of date November 26, 1897, February 3, and 8, 1900, be decreed to be within the prohibited acts mentioned in said decree, and that respondents be enjoined from further proceeding in respect thereto. The present hearing is upon complainants' application for a temporary order of injunction prayed for in said supplemental and ancillary bill. Respondents have demurred to said bill, and also interposed the plea that said bill was filed without notice, contrary to the provisions of the fifty-seventh equity rule. The sole question before the court in the original case was the reasonableness of the schedule of rates prescribed by the act of 1893, and the right of the board of transportation and attorney general of the state to take action looking to the enforcement of the provisions of that act. The terms of the decree imposing restraint upon the action of the board of transportation and the members thereof are in the following words:

"That the board of transportation of said state, and the members and secretaries of said board, be in like manner perpetually enjoined and restrained from entertaining, hearing, or determining any complaint to it against said railway companies, or any or either of them, or their receivers, for or on account of any act or thing by either of said companies or their receivers, their officers, agents, servants, or employés, done, suffered, or omitted, which may be forbidden or commanded by said act, and particularly from reducing its present rates of charges for transportation of freight to those prescribed in said act, and that the attorney general of this state be in like manner enjoined from bringing, aiding in bringing, or causing to be brought, any proceeding. by way of injunction, mandamus, civil action, or indictment, against said com panies, or either of them, or their receivers, for or on account of any action or omission on their part commanded or forbidden by the said act."

The decree did not enjoin the board from exercising acts other than those providing for the enforcement of the rates specified in the act of 1893. The board still possess power under the act of 1887 to fix reasonable charges for freight and carriage. The supreme court of the state, in a recent opinion (rendered on the 7th of the present month), in the case of Telephone Co. v. Cornell, 82 N. W. 1, held that the act of 1893 did not repeal the act of 1887, or materially modify the powers of the board of transportation given by that act. That decision, with respect to the existence of the 1887 act and the powers of the board thereunder, is binding upon this court. The decree did not prohibit the board from investigating and determining the reasonableness of a particular commodity rate. What was decided by the supreme court in its decision was that the rates prescribed by the act of 1893, when treated and considered as a whole, were unfair to the carrier, and, as a whole, did not afford reasonable remuneration for the service rendered. This the court expressly stated, in the following language:

"The general question argued before us on the original hearing was whether the rates established by the Nebraska statute, looking at them as an entirety,

were so unreasonably low as to prevent the railroad companies from earning such compensation as would be just, having due regard to the rights both of the public and of the companies. In our examination of that question, it was appropriate and necessary to inquire as to the earnings of the respective companies under the rates which they had established; looking at those rates, also, as an entirety. In this way we ascertained the probable effect of the statute in question. We did not intend, by an affirmance of the several decrees, to adjudge that the railroad companies should not at any time in the future, if they saw proper, reduce the rates, or any of them, under which they were conducting business at the time the final decrees were rendered, nor that the state board of transportation should not reduce rates on specific or particular articles below the rates which the companies were charging on such articles when the decrees were entered. It may well be that on some particular article the railroad companies may deem it wise to make a reduction of the rate, and it may be that the public interests will justify the state board of transportation in ordering such reduction. We have not laid down any cast-iron rule covering each and every separate rate. We only adjudged that the enforcement of the schedules of rates established by the state statute, looking at such rates as a whole, would deprive the railroad companies of the compensation they were legally entitled to receive. We did not pass judgment upon the reasonableness or unreasonableness of the rates on any particular article prescribed by the statute or by the railroad companies."

Here we have an interpretation of the decree by the court rendering it which leaves its object, meaning, and effect, to my mind, plain and free from doubt. The decree further provides:

"That the defendants, members of the board of transportation of said state, may hereafter, when the circumstances have changed so that the rates fixed in the said act shall yield to the said companies reasonable compensation for the services rendered, apply to this court, by supplemental bill or otherwise, as they may be advised, for a further order in that behalf."

This provision was to enable the board of transportation, upon a showing to the court in the future that conditions had changed in such manner that the rates fixed by the act of 1893 would thenceforth yield reasonable compensation for the service, to obtain a suspension or modification of the order of injunction. No application need be made to the court for a modification of the injunction respecting those acts and matters which were not involved in or covered by the decretal order.

The only question, then, requiring consideration at this time, is, do the three orders complained of, to wit, of November 26, 1897, February 3 and 8, 1900, or either of them, fall within the prohibited provisions of the decree? The order of November 26th, restoring the car-load rate, clearly does not; and, if we are right in saying that by the decree the board of transportation were left free to investigate and determine the reasonableness of the rates on particular or specific articles, then the orders of February 3d and 8th do not. This leaves it unnecessary to determine whether equity rule 57 applies to the present bill. A temporary order of injunction is denied.